and Charles Doyle. Good morning, may it please the court. We have one of those instances in the law here where the easiest remedy is also the correct one, and that's to send this back to the district court by holding the provisions of the CJA that I've challenged unconstitutional and require Congress to do what they said they were going to do in 1970, which is to... So, you know, as I read all the material that you submitted in, I shouldn't say I read it, I don't want to give the impression that I read every word in the 700 page exhibit that you filed in support of your motion. I hope you do. In support of your motion in the district court to enjoin or to stay the proceedings in the district court. But at the time of sentencing, I think it was in the Choi case, you made it very clear that you weren't complaining about any ineffectiveness in front of the district court. And as I read all of your clients suffered any kind of detrimental, something happened to them inappropriately as a result of the way in which the CJA funds are administered by the Central District of California. So if the court goes ahead and accepts the government's... Is that correct? If the court goes ahead... Is it correct that you're not complaining about anything with respect to your clients? No, that's not correct. No, that's not correct. What is the defect or what is the problem that your clients suffered as a result of the way in which the Central District of California administers the CJA program? The problem is that we'll never know. Well, that's not an answer. We will never know on the current record because the court is so intimately... I'm not unsympathetic to the complaints you have about the way in which the Central District administers the CJA program. I read and many of us on the circuit judges have sat as in the role of having to approve and sign off on the excess amount over the statutory max of $10,000. And for years I had read and considered all of those applications. So I have some familiarity with the system. But I want you... And I'm not unsympathetic to what CJA counsel have to go through and the limits and the restrictive amounts that are paid to CJA counsel and all that you have to do. But I'm trying to figure out how that all relates to these defendants. I think that was about three minutes of a ten-minute argument. The court consolidated down from 30 where the civil case... Answer my question. That's all. If the court accepts the government's invitation to go down the ineffectiveness assistance of counsel route, then you set precedent where any constitutional violation can be swept over by an effectiveness analysis. And that's not... So you're not making an IAC argument? I would be happy to go back to the district court and talk about issues at sentencing where I may have fallen short. It was my view... Counsel, counsel, counsel, I'm not going to talk you into anything and your time is ticking. My question is, are you making an IAC argument? The argument that I have made from the very beginning, notwithstanding all of the district... It's just a yes or no. It's just a yes or no. My issue is with a problem, a structural problem with a lack of impartiality in the court itself. I'm taking that as a no. Is that right? I have not raised that issue. I never have raised that issue. Okay. Okay. So the argument is that the judge was not impartial. The argument is that under the current structure, the court is necessarily partial. Yes. Okay. So what's your strongest argument along those lines? My strongest argument is that we can never know. Take a look at the sentencing. Are you calling this... Are you trying to call this structural error? That's exactly what I've argued the entire time from the very beginning. And that's why any individual prejudice in these cases, although I'm happy to get to that, is irrelevant. And that's the fundamental problem. Because we can never know, that is the precise fundamental problem of structural error. It's just like if somebody doesn't get a lawyer at all. We can't perceive the individual prejudice. I appreciate that. So if we get back to your argument, which is judicial bias, structural error, the Supreme Court's recently spoken to that. So what's your strongest argument that we should find judicial bias? So if we take a look at the sentencing, for example, we've got guidelines arguments. I submitted Judge Gwynne's Harvard Law Review analysis that the guidelines are median 4.5 times higher than they should be based on community sentiment, which Congress directed the United States Sentencing Commission to take into account to fashion the guidelines three and a half decades ago. And they totally ignored. OK, I've got that. And then I've got the Brennan Center's 250 pages worth of analysis and statistics and so on and so forth. The government puts in one citation in support of heavy sentences, an article from the Sacramento Bee. And that was in the Choi case. So we look at this and we say, did the defense really go in on equal footing? Did I, as defense counsel, did I really receive the same degree of respect and did my arguments receive the same degree of consideration that the government did? Can we say on these records that the court impartially analyzed these cases and delivered the correct sentence? According to Judge Gwynne's analysis, no, all of the clients would currently be out of jail. The sentences are way too high. But again, because we're talking about structural error, I don't need to show individual prejudice. But to the extent that I do, that's it. Now, if we do try to push this into an ineffective assistance of analysis situation like the government's been urging to do the whole time, then if you think about it, the actual ineffectiveness claim is not to me, it's to the court. Because the court is controlling what the defense does and decides what the defense should do and what the defense shouldn't do, what's compensable, what's not compensable, and so on and so forth. And I have to tell you, I don't speak for anyone else on the panel. I'm no longer on the panel. As you know, they picked me off because I called them out on all this. But every time I sat down, every time I thought, jeez, I wonder if Judge Fisher's going to pay me for this. I wonder if I'm going to get paid. And unlike any other legal representation where I might have civil remedies, the judiciary, and I don't think it's malice, but the judiciary, you guys have removed yourselves from any sort of review of these types of claims and situations. I get some sort of rubber stamp appellate situation by a single judge based on In re Smith, which, by the way, stands on a pre-state CJA case in which the defense counsel was ultimately required to represent a defendant pro bono. So we've got structural error that just pervades this entire thing. The judicial bias is not a function of the judge having a financial interest, right? So we have that, too. I mean, the government has sort of swept over that. Judge Fisher, astonishingly, found in her ruling from the bench that she had no conflict. She didn't bother to do any analysis, as some of the judges below didn't, on my motion to preclude further prosecution or to dismiss, but she said, oh, no, I don't have any financial interest in the particular outcome of this case. But I think that really misapprehends by inappropriately narrowing what financial interest is. I've put in extensive evidence about the legislation. We were supposed to get a $6. I don't want to make this about money. It's not about money. But if you want to ask that question, you know, we were supposed to get a $6 an hour raise that they were trying to push through the Judicial Conference of the United States for a decade. It was supposed to be $13 to bring it up to levels that they would have been, that were authorized in the mid-1980s. It was finally reduced to $6. That was $1.9 million. The judiciary failed to push that through Congress while getting $133 million out of the same pot for their own salaries and expenses. So to the extent that, and finally, Judge Fisher, who said, well, that's not a problem, ultimately concluded in the ad hoc committee to review the CJA's report, which I've submitted pursuant to a 28-J letter that the government challenges, but I didn't know how else to put it in there. She's co-author of a report that draws that very conclusion and says that's the whole point of the report, that conflict. Okay. Ms. Dolan, did you want to save some time for rebuttal? I had hoped to save a minute or two for rebuttal, yes. All right. May it please the court, Consuelo Woodhead, on behalf of the United States. The fatal flaw in all three of these appeals is the one, Your Honor, Judge Pius noted at the beginning, and that is that none of the appellants, who are Mr. Anguiano, Mr. Doyle, and Ms. Choi, have alleged any injury in fact or any prejudice to them in their cases. The litigation here is between those three appellants and the United States as a prosecuting agency. This is not the forum in which to address, quote, structural errors in the CJA system. How could a CJA attorney raise the kind of argument that Ms. Dolan wants to advance? Well, they could raise it in litigation between them and the district court, to the extent they're claiming that they were overburdened by the requirements. To the extent she's claiming that CJA panel lawyers... If it's a bill for maybe $50,000, and the central district, through all its administrative internal workings, says, ah, no, that's just too much, we're cutting it to $25,000, a 50% reduction. That would have to be... Is there ever any way in which a lawyer could bring that to the Court of Appeals? Yes, in Ray Smith. But that's only through a one-judge, that was a one-judge order. That was even before, that was a pre-CJA case. That is a one-judge order, it is a pre-CJA case, but whatever the remedy the lawyer would have, the remedy would have to exist in a forum in which the lawyer is the litigant, not the defendant. The defendant in that case, if the defendant received... Could it be a post-judgment order that's appealable? I have not looked into that, Your Honor, because I think the question before this Court is, do these three defendants have a complaint? Well, it's pretty clear they don't, but I'm just curious. Because, you know, the Central District is really tough. Looking at it more broadly, to the extent... Let me ask you this, I have another question. Let me ask you this. I guess, suppose that, in one of the documents I read, there was some policy statements about expert witnesses, I guess, that the district is kind of very sensitive to appointing expert witnesses. I gather if a CJA counsel requested funds for an expert, and it was denied, and it was really important, I gather they could appeal that on direct appeal. Isn't that correct? Could. Because his Fifth or Sixth Amendment rights were violated by the denial of the expert, and the fairness of his trial or sentencing proceeding was affected. So, yeah, there's a whole series of cases in this Court which we've cited on that. Fields, Sims, Labanassat, and Maschner or Spaulding. And there's nothing of that sort here? Absolutely not. Each of these defendants entered very favorable guilty pleas. They each received very favorable sentences. There's no claim that Ms. Dolan's representation fell below an objective standard of reasonableness. No claim of any prejudice from her representation. There's no dispute that these defendants received procedural correctness in their sentencing, or that they received substantively reasonable sentences. So these defendants on these appeals have no complaint. Well, but counsel, maybe I shouldn't wade in, but she has been very clear. She's not bringing a Strickland claim. She's bringing a claim of judicial bias. And given the Supreme Court has recently reiterated that if there were a claim of judicial bias, a valid claim of judicial bias, she wouldn't need to show prejudice, right? Well, first, there was no request to recuse in any case other than the Doyle case. Counsel, my question, I'm going to do the same thing. This is a yes or no answer, because I just need to sort of corral. Your argument now seems to be straying from what she's really fairly raising. Whether it's meritorious, that's a different matter, and I struggle to find a claim of judicial bias here. But just for starters, she's not raising Strickland, and if she had a valid claim of judicial bias, she wouldn't need to show prejudice, would she? If she had a claim of judicial bias that rose to the type of structural error in Toomey, no, she would not have to show individual prejudice. Okay, so your argument is you don't think there was a claim of bias, a valid claim of bias? Absolutely not. Okay, that's helpful to me. Thank you. And I can explain that a little more, because there's no way in which any of these judges inappropriately injected themselves into the proceedings. Whenever Ms. Dolan was asked that question, she certified that that was not the case. In the Anguiano case, she certified in the plea agreement that there had been no interference from the CJA committee in the case, and that despite the claims in the discovery demand letter, she had been able to effectively represent the client in that case. Counsel, was there a due process claim raised in the district court? It's a little hard for me to say because of the way the pleadings are written, but I think one could argue that she did raise a Fifth Amendment claim. Though the Fifth Amendment claim was essentially the same as the Sixth Amendment claim. You argue that there's a standing question here. Yes. Do you still stand by that argument? Absolutely still stand by that. I think the standing argument and the argument on the merits kind of converge in this case, because each of the claims she made in the district court for relief, such as a continuance, a stay, an injunction, would require a showing of prejudice. Well, however you interpret those claims, if you just interpret this that she was asking for a stay or was asking for a continuance, and we know what our standard review is on that, but certainly isn't incarceration for these defendants enough to give this court standing? I mean, if the district court abuses discretion in not granting a continuance until this whole CJA matter and dispute got resolved, if, I said if, wouldn't that in and of itself, since these defendants are incarcerated, wouldn't that be enough to equate to standing? Wouldn't that be injury, in fact? I don't think so in this case. One of the elements for a continuance is prejudice from denial of the continuance. And they didn't, none of the defendants claimed any prejudice from denial of the continuance. None of them claimed any injury to them from the supposedly bad operation of the CJA. And none claimed any causal connection of any provisions of the CJA to them. Well, if you were in our position and had to write this opinion, supporting the side of the United States, how would you write it? That, this is a, these are three appeals in which counsel is attempting to litigate grievances that she and maybe many CJA panel lawyers have with the system. But the defendants in these appeals have not alleged any cognizable injury to them and have not alleged any prejudice to them. Why doesn't that just result in an affirmance of her motion to stay or motion for an injunction or whatever, denial? It certainly can. It should result in an affirmance of all of those matters. But that's different than saying there's no constitutionals, there's no injury in fact, as Judge Fisher was saying. I think the court can certainly decide the case on either ground. The factual underpinnings for both are the same. The conceptual, the legal framework is slightly different in the two. But ultimately, the factually determinative matter here is that none of these appellants have alleged that anything bad happened to them in these cases. They received effective representation. They received a fair proceeding and a fair sentencing. Thank you. Well, that's a bunch of hogwash. I know you're frustrated, all right, but we don't need. I'm responding to what the... Respond to the substance of the argument. My clients did articulate specific injury to them, both structural and individual error. We're talking about a situation, and I understand it's an intractable one, but we're talking about a situation that everyone has known has been broken since 1970. The Prado Committee, which I cited in my papers, found in 1993 that there was a situation that we have a fundamental structural problem that needs to be remedied. 25 years later, the Ad Hoc Committee's report says we reluctantly... It starts out saying we reluctantly have to draw the same conclusion, and not only that, but the judiciary doesn't even have data to support the $1 billion that it spends on the CJA program. What's going on here? And so my point is that at this point, if my clients don't have a constitutional claim, then the problem never gets solved. Due process, which we've raised throughout, and the Sixth Amendment right to counsel are both cognizable. Okay.
judges: Fisher, Paez, Christen